UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| REGINALD RICE | ) | |
| | ) | |
| | ) | NO. 2:01-CR-30 |
| V. | ) | (NO. 2:04-CV-171) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**REPORT AND RECOMMENDATION**

On August 22, 2001, petitioner was convicted in this court of aiding and abetting the distribution of cocaine in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. On December 3, 2001, he was sentenced to 260 months of incarceration and six years of supervised release. He subsequently appealed to the Sixth Circuit Court of Appeals, which affirmed his conviction and sentence on June 2, 2003.[1]

Pursuant to U.S.C. § 2255, petitioner has filed a motion in which he asks that his sentence be vacated, set aside, or corrected. (Doc. 76). The respondent, the United States, has filed a response. (Doc. 79). Petitioner's motion has been referred to the magistrate judge for a report and recommendation pursuant to the standing order of this Court and 28 U.S.C. § 636(b)(1)(B).[2]

As a basis for relief under § 2255, petitioner asserts that his attorney was ineffective. He claims that his attorney was ineffective in two particulars, both of which concerns the

---

[1]*United States v. Rice*, 2003, WL 21277334, 6th Cir., June 2, 2003.

[2]Doc. 77.

United States' rebuttal evidence presented at trial: (1) that his attorney was ineffective for failing to object to certain Rule 404(b) evidence offered by the United States, and thereafter by failing to request the district judge to give "limiting instructions" to the jury regarding that 404(b) evidence; and (2) that his counsel was ineffective for failing to object to the rebuttal testimony of Agent Rainer Drolshagen of the FBI on the grounds that Agent Drolshagen's testimony concerned a statement elicited by Drolshagen from petitioner in violation of his Sixth Amendment right to counsel.

Joma Matthews was charged in the first three counts of the Indictment with distribution of crack cocaine on three separate occasions. In Count Four, Matthews and petitioner were charged with aiding and abetting each other in the distribution of crack cocaine. Both were convicted. Obviously, it was and is only the charge set out in Count Four of the Indictment that is relevant to petitioner herein.

The convictions were based in large measure on "controlled buys" of drugs by the First Judicial District Drug Task Force and the FBI, and the testimony of Charles Barnette, a confidential informant working on behalf of those two agencies.

On March 17, 2000, at the direction of law enforcement agents and while under their surveillance, Barnette traveled to apartment 212 in an apartment building on Highland Avenue in Johnson City, Tennessee. Barnette entered the apartment and met with the co-defendant Matthews, who was known as "Nature" or "Keith." Matthews sold Barnette two grams of crack cocaine for $200.00. Barnette thereafter left the apartment and delivered the crack cocaine to the law enforcement agents. This transaction was monitored and recorded

by the agents. At trial, this tape recording was played for the jury; Barnette identified his voice and Matthews' voice on that tape.[3]

On March 23, 2000, Barnette traveled to the apartment on Highland Avenue and again met with Matthews. Barnette obtained four rocks of crack cocaine from Matthews, in return for which he paid Matthews $400.00. This drug transaction also was recorded. After the drug deal was concluded, Barnette left the apartment and delivered the crack cocaine to the agents. As before, a tape recording of the transaction was played for the jury.[4]

On May 31, 2000, Barnette once more went to the Highland Avenue apartment at the behest of law enforcement agents. When he entered, Matthews introduced him to "Red," the petitioner herein. Barnette testified that he had seen petitioner in the apartment on a prior occasion, but had never dealt directly with him. In a recorded conversation, Barnette told Matthews and petitioner that he wanted to purchase some crack cocaine and they discussed the amounts and price. Barnette stated that he wanted to purchase an ounce of crack cocaine, but Matthews said that he did not have that much available. Matthews took Barnette into a bedroom, followed by petitioner. After Barnette repeated his desire to purchase on ounce of crack cocaine, Matthews and petitioner discussed the amount of crack cocaine each of them had in his possession. Barnette ultimately paid Matthews $200.00 for the crack cocaine, some of which came from petitioner's supply. Matthews told Barnette that he should return later than evening and they possibly would have more crack cocaine available. A tape

---

[3] R.46; Barnette at 8/22/01; TR. 9-12.

[4] R. 46; TR. 12-15.

recording of this transaction was played for the jury, and Barnette identified the voices on that tape as his, Matthews', and petitioner's.[5]

Later that day, Barnette returned to the apartment, and Matthews and petitioner were still present. Barnette negotiated a drug transaction with petitioner; petitioner ultimately sold six grams of crack cocaine to Barnette for $600.00. A tape recording of this transaction was played for the jury, and Barnette identified the voices on that tape as being those of himself, Matthews, and petitioner.[6] It is noted that Barnette testified that he knew "Red," i.e., petitioner, at least by sight. He had seen him at the apartment before, although he had never had a drug transaction with him.[7]

The co-defendant Matthews testified in his own defense.[8] During his testimony, he admitted that he sold crack cocaine to the confidential informant on three of the four occasions as alleged in the Indictment. As to the fourth sale, i.e., the one charged in Count Four, Matthews testified that he was present during that sale, but that the crack cocaine was sold to Barnette by "Reds," *not "Red" thus not petitioner*. Matthews went on to testify that he did not know petitioner, that he did not know where petitioner was from, and that the first time he saw petitioner was at their initial appearances before this court.[9]

---

[5]R. 46; TR. 16-21.

[6]R.46; TR. 21-26.

[7]R. 46; TR. 20.

[8]R. 46; TR. 130, *et seq*.

[9]R. 46; TR. 134-35.

4

To meet this unexpected testimony by Matthews, the United States announced to the district judge that it wished to introduce, as rebuttal evidence, certain F.R.E. 404(b) evidence.[10] Petitioner's counsel objected to this proposed evidence.[11] After hearing argument, the district judge ruled that the evidence was admissible to establish petitioner's identity as the person who sold the crack cocaine as charged in Count Four.[12] Having the court's imprimatur to present this 404(b) evidence, Barnette was recalled to the witness stand. He testified that on May 22, 2000, he went to the Highland Avenue apartment to purchase crack cocaine; when he got there, petitioner and a female were in the apartment and he observed marijuana and crack cocaine on a coffee table, the odor of which was strong; petitioner told him that the co-defendant Matthews was away for the weekend; Barnette asked Petitioner to sell him some crack cocaine, but petitioner refused, telling Barnette that he should talk to "Keith" about that purchase.[13] It should be recalled that "Keith" and Matthews are the same person. This testimony established that Matthews and petitioner knew each other, contrary to Matthews' testimony.

The United States' other rebuttal evidence was the testimony of FBI Special Agent Drolshagen. Drolshagen testified that while he was processing petitioner after his arrest, i.e., fingerprinting him, etc., Matthews was visible in a holding cell across the room. Agent

---

[10]R. 46; TR. 139-40.

[11]TR. 140.

[12]R. 46; TR. 139-45.

[13]R. 46; TR. 145-47.

5

Drolshagen testified that he asked petitioner if he knew Matthews, to which petitioner responded in the affirmative, telling Drolshagen that he had known Matthews prior to their respective arrests.[14]

Petitioner argues that the Rule 404(b) evidence included testimony regarding his personal drug use and therefore went too far under Rule 404(b). He argues that his attorney was ineffective for failing to object to that evidence, and for failing to request a limiting instruction from the district judge.

With respect to Agent Drolshagen's rebuttal testimony, petitioner asserts that his attorney should have objected to that testimony on the basis that it violated his Sixth Amendment right to counsel.

To obtain relief under § 2255, the petitioner must prove (1) an error of constitutional magnitude, or (2) a sentence imposed outside the statutory limits, or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496 (6th Cir. 2003) cert. denied, 540 U.S. 1133 (2004); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) cert. denied, 540 U.S. 879 (2003).

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion that the defendant-petitioner is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). In this case, there is no need to hold an evidentiary hearing, inasmuch as all the facts

---

[14]R. 46; Drolshagen at 8/22/01; TR. 147-49.

necessary to the court's decision are already in the record.

To establish ineffective assistance of counsel, the petitioner must show that his attorney's performance was deficient, and that the deficient performance prejudiced his defense to such an extent that the trial was unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Both prongs of the test must be met, *Strickland, supra*, 466, U.S. at 697. Thus, to obtain relief under § 2255, the petitioner must show both (1) deficient performance, and (2) prejudice as a result of that deficient performance.

This court's scrutiny of defense counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689. The reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The court must make an independent judicial evaluation of the attorney's performance, *Ward v. United States*, 995 F.2d 1317, 1322, (6th Cir. 1993), and determine if counsel acted reasonably under all the circumstances. *Roe v. Flores-Ortega*, 528 U.S. 470-481 (2000).

In order to satisfy the "prejudice prong" of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The reviewing court must focus on whether the attorney's errors likely undermined the reliability of, and thus the confidence in, the result of the trial. *Lockhart v. Fretwell*, 506 U.S. 364, 369

7

(1993). In other words, as *Strickland* instructs, when judging a claim based on ineffective assistance of counsel, this court must decide if the attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In light of this criteria, it cannot be said that the performance of defendant's attorney was deficient or ineffective or, even if it was, that it actually prejudiced him.

With regard to the 404(b) evidence, it is petitioner's argument that it was unnecessary and impermissible for Barnette to mention petitioner's drug use merely to establish his identity. Petitioner contends that his counsel was ineffective for failing to object to Barnette's testimony and for failing to request an instruction from the district judge regarding the limited use of the testimony.

Firstly, petitioner's attorney did object to the testimony, and the issue was raised before the Court of Appeals:

> Barnette's testimony was offered to rebut Matthews' testimony that he did not know [petitioner], and was therefore offered for the additional purpose of establishing [petitioner's] identity. The evidence was certainly probative to establish [petitioner's] identity and his relationship to Matthews, and to rebut Matthews' testimony. The district court did not abuse its discretion in admitting the evidence.

*United States v. Rice*, 2003 WL 21277334 at *5 (6th Cir. 2003).

Even if the petitioner's attorney did not object specifically to the reference to personal drug use, that failure was not a manifestation of ineffectiveness. It was a relatively brief reference in the course of Barnette's testimony, and it provided reasonable background information.

8

Had an objection been made, it would have been properly overruled. Neither was it ineffective for counsel to eschew requesting a limiting instruction from the district judge. Barnette's reference to the presence of illegal drugs was relatively brief and, as noted immediately above, properly admitted. If counsel had requested a limiting instruction, it would have called the jury's attention more forcefully to the presence of illegal drugs. Counsel found himself in a Catch-22 situation: request a limiting instruction and call even more attention to the testimony, or say nothing. In weighing the cost of the instruction against its potential benefits, it cannot be said that counsel's failure to request a limiting instruction demonstrates that he was ineffective. In fact, it suggests the contrary.

Additionally, there was no prejudice from the admission of this testimony. As already discussed, the reference to the presence of drugs was brief. And, when Barnette's entire testimony is read, it is arguably exculpatory to the extent that Barnette testified that petitioner declined to sell him drugs on this occasion.

Agent Drolshagen's testimony, in retrospect, should not have been allowed and admitted into evidence. It was violative of defendant's right to counsel. Petitioner's answer to Agent Drolshagen's question obviously was incriminating, and Agent Drolshagen should have known that at the time he asked the question. It will be assumed for purposes of this report and recommendation that counsel's failure to object to the testimony was ineffective. That testimony, however, ultimately did not prejudice the petitioner. As mentioned earlier, the petitioner must show that there is a reasonable probability that the outcome would have been different if his attorney had objected to Drolshagen's testimony, and Drolshagen's

9

testimony excluded. *Strickland*, 466 U.S. at 694. The evidence of petitioner's guilt was abundant, and he doubtlessly would have been convicted without Drolshagen's rebuttal testimony. To put it simply, Drolshagen's testimony was inconsequential to the outcome of petitioner's trial.

In conclusion, petitioner's counsel was not ineffective due to his failure to object specifically to Barnette's testimony regarding petitioner's personal drug use, or by his failure to request a limiting instruction from the judge. Moreover, even if Drolshagen's testimony had been excluded, the outcome of the trial would have been the same.

It is respectfully recommended that petitioner's motion to vacate, etc., (Doc. 76), be denied.[15]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[15] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).